NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
ST. CROIX DIVISION

Manuel Q. CRUZ, et al., on behalf of
themselves and others similarly situated,

    Plaintiffs,    Civ. No. 1:09-79

v.    OPINION

UNITED STATES OF AMERICA, et al.,

    Defendants.

THOMPSON, U.S.D.J.[1]

    This matter has come before the Court by a Motion to Dismiss [docket no. 55] for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3), filed by the Defendants, the United States of America ("the Government"), the United States Postal Service (USPS), and John Berry ("Berry"), in his official capacity as the Director of the Office of Personnel Management (OPM) (all collectively, "the Defendants"). Plaintiffs, forty-seven proposed class representatives who are former and current employees of the United States and its agencies, including the Defendant USPS, oppose this motion [61]. The Court has reached a determination after considering the submissions of the parties and without oral arguments in accordance with Federal Rule of Civil Procedure 78(b). For the following reasons, Defendants' Motion will be granted and Plaintiffs' Second Amended Complaint [58] will be dismissed. All other pending motions will be dismissed as moot.

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

## I. BACKGROUND

This case arises out of a dispute over the benefits afforded to certain federal government employees. Employees residing in certain areas outside of the continental United States are able to receive Cost of Living Allowances (COLAs) based upon the living costs associated with a specific locality. *See* 5 U.S.C. § 5941. The retirement benefits granted to federal civil servants are based, at least in part, on an employee's highest three consecutive years of "basic pay." *See* 5 U.S.C. §§ 8331(4), 8401(3). Pursuant to 5 C.F.R. § 591.239(b), the OPM does not include COLAs in an employee's "basic pay" when calculating retirement benefits. Although Defendants contend that this is a matter of statutory mandate, Plaintiffs allege that this OPM regulation is improper for numerous reasons.

Plaintiffs allege in the Second Amended Complaint eight separate claims challenging, on various theories, the Defendants' exclusion of COLAs from the calculation of each Plaintiff's "basic pay" for purposes of computing his or her retirement benefits. (2d Am. Compl. ¶¶ 3.2, 4.1–4.8). More specifically, Plaintiffs claim that 5 C.F.R. § 591.239(b) is void because: (1) it is contrary to congressional intent; (2) COLAs are part of "base pay" absent a statutory exclusion not present in this case; (3) it violates the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.*; (4) it is arbitrary, capricious, and an abuse of OPM's rule-making authority; (5) it violates the Fifth and Fourteenth Amendments to the United States Constitution because it denies Plaintiffs' the equal protection of the law; (6) it has a disparate impact upon proposed class members in violation of 42 U.S.C. § 2000e-16; (7) it deprives proposed class members of property without due process of law in violation of the Fifth Amendment; and (8) it constitutes an unlawful taking without just compensation.

Defendants contend that the first eight claims raised by Plaintiffs must be dismissed because Congress has set up a comprehensive dispute resolution system that deprives this Court

2

of jurisdiction over these pending claims. According to Defendants, these claims are properly brought before the OPM and then the Merit System Protection Board (MSPB) because the MSPB has exclusive jurisdiction to review retirement claims adjudicated by OPM. In opposition to Defendants' motion, Plaintiffs argue that MSPB does not have proper original or appellate jurisdiction over this case and that this case presents a systemwide challenge to OPM procedure, not to individual retirement-benefit determinations. Furthermore, Plaintiffs argue that because the pending case alleges that OPM's rule-making constitutes employment discrimination in violation of 42 U.S.C. § 2000e-16, it is a "mixed case" that this Court can properly exercise jurisdiction over.

Plaintiffs additionally raise three unrelated claims concerning an interim regulation promulgated by OPM in September 2010 ("the Interim Regulation"). *See* General Schedule Locality Pay Areas, 75 Fed. Reg. 60,285 (Sept. 30, 2010) (codified at 5 C.F.R. § 531.603). The Interim Regulation established separate beneficial locality pay areas for Hawaii and Alaska to the exclusion of Puerto Rico, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands. (2d Am. Compl. ¶¶ 4.9–4.11). The Second Amended Complaint alleges that the Interim Regulation (1) has a disparate adverse impact on the proposed class members in violation of 42 U.S.C. § 2000e-16; (2) violates a previous settlement agreement made by the Defendants; and (3) that promulgation of the Interim Regulation was in violation of the APA. Defendants argue that Plaintiffs' claims concerning the Interim Regulation must be dismissed because Plaintiffs have not exhausted their administrative remedies, there is no case or controversy as to some of these claims, and that the APA affords only a limited judicial review of OPM regulations concerning locality pay.

All of the above arguments will be addressed in turn.

## II. ANALYSIS

### a. Sovereign Immunity and Consent to Suit

The United States, along with its agencies and employees, is generally immune from suit pursuant to its status as a sovereign entity. *See, e.g., United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Government, however, may consent to being sued in any court, and the terms of that consent "define that court's jurisdiction to entertain that suit." *Id.* Here, Plaintiffs argue that jurisdiction is established according "to all or some combination of the following: 48 U.S.C. § 1612(a); 28 U.S.C. §§ 1331, 1339 and 1346(a)(2); 39 U.S.C. §§ 401 and 409; and 5 U.S.C. §§ 702 and 5596." (2d Am. Compl. ¶ 2.1).

A plaintiff seeking to establish the consent necessary to bring suit against the United States, its agencies, or its individual agents may not rely on general jurisdictional statutes, but instead a plaintiff "must identify a specific statutory provision that waives the government's sovereign immunity." *Clinton Cnty. Comm'rs v. EPA*, 116 F.3d 1018, 1021 (3d Cir. 1997) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). There are three particular statutory provisions that, according to Plaintiffs' Second Amended Complaint, provide a waiver of sovereign immunity in this case. First, the APA waives sovereign immunity in certain cases where a plaintiff seeks equitable relief from administrative agencies. *See* 5 U.S.C. § 702. Second, Congress has waived sovereign immunity as to Defendant USPS. *See* 36 U.S.C. § 409. Finally, the Little Tucker Act provides congressional consent for plaintiffs seeking money damages in an amount less than $10,000 to bring suit against the United States. *See* 28 U.S.C. § 1346(a)(2).

Despite these waivers of sovereign immunity, Defendants argue that a different federal statute, the Civil Service Retirement Act (CSRA), 5 U.S.C. § 8331, *et seq.*, precludes judicial review of Plaintiff's first eight claims because the CSRA provides an alternative, comprehensive

4

remedial scheme. Defendants contend that the OPM is the appropriate forum to hear these claims, and if necessary review of that decision should be heard by the MSPB, followed by the Federal Circuit. The Court agrees.

### i. Statutory Consent to Suit

Of particular relevance to this pending motion is the waiver of sovereign immunity provided by the APA. Plaintiffs have apparently waived the argument that Defendants have consented to suit under the Little Tucker Act. *See* (Pls.' Br. at 4 ("Plaintiffs do not rely on jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), except to the extent required by later possible decisions of the Court in this case."); *see also* (*id.* at 20 ("The short answer to this argument is that the present case is brought under 28 U.S.C. § 1331 (primarily) and 5 U.S.C. § 702 (secondarily), and venue is proper in this Court under 28 U.S.C. § 1391(e). Plaintiffs do not rely on jurisdiction under the Little Tucker Act.")). In addition, neither party has addressed the issue of whether consent to sue Defendant USPS may be found in 36 U.S.C. § 409, and therefore the Court considers this argument waived as well.[2]

The APA provides in relevant part that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

---

[2] Regardless of whether these arguments have been waived by the Plaintiffs, the Court notes—without deciding—that the below analysis likely would apply with full force to any consent argument related to either the Little Tucker Act or 36 U.S.C. § 409.

5

5 U.S.C. § 702. This waiver of sovereign immunity is not without its limits. For example, § 702 of the APA further provides that "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Likewise, § 701 of APA excludes administrative determinations from judicial review where another "statute[] preclude[s] judicial review." *Id.* § 701(a)(1).

As a general rule, a waiver of the federal government's sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citations omitted). Although the APA generally provides for a waiver of sovereign immunity over challenges to administrative rule-makings such as 5 C.F.R. § 591.239(b), § 702 of the APA cannot be read in isolation. *See* 5 U.S.C. §§ 701(a)(1), 702. Courts throughout this country have consistently held that "the APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere, and . . . claims seeking relief expressly or impliedly forbidden by another statute." *Transohio Savings Bank v. OTS*, 967 F.2d 598, 607 (D.C. Cir. 1993); *see also Sprecher v. Graber*, 716 F.2d 968, 974 (2d Cir. 1983).

ii. The CSRA is a Comprehensive Scheme Restricting the Consent To Be Sued Contained in the APA

The CSRA established the regimen of retirement benefits afforded to federal employees. The system of determining and distributing retirement benefits has been entrusted to the OPM. *See id.* § 8347(a) (OPM "shall perform, or cause to be performed, such acts and prescribe such regulations as are necessary and proper to carry out this subchapter [i.e., 5 USC § 8331, *et seq.*]."). Furthermore, Congress provided that OPM "*shall* adjudicate *all* claims" arising under the CSRA. *See id.* § 8347(b) (emphasis added). This jurisdiction is exclusive. *See Fornaro v.*

*James*, 416 F.3d 63, 64 (D.C. Cir. 2005) (Roberts, J.). The CSRA specifically provides that "an administrative action or order affecting the rights or interests of an individual or of the United States under [the CSRA] may be appealed to the [MSPB] under procedures prescribed by the [MSPB]." 5 U.S.C. § 8347(d)(1).

The MSPB "has two types of jurisdiction, original and appellate." 5 C.F.R. § 1201.1. Plaintiffs first argue that MSPB does not have appropriate original or appellate jurisdiction to hear this case. This argument, however, misreads the pertinent statutes and administrative regulations.[3] In addition to 5 U.S.C. § 8347(d)(1), which specifically provides for an appeal to the MSPB from OPM determinations concerning retirement benefits, the MSPB's own regulations provide for jurisdiction over this case. According to its own regulations, MSPB has appellate jurisdiction "over appeals from agency actions when the appeals are authorized by law, rule, or regulation. These include appeals from the following actions: . . . (6) Determinations affecting the rights or interests of an individual or of the United States under the Civil Service Retirement System or the Federal Employees' Retirement System." 5 C.F.R. § 1201.3(6)[4]; *see also Lisanti v. Office of Pers. Mgmt.*, 573 F.3d 1334, 1339 (Fed. Cir. 2009) ("We agree with [plaintiff] that OPM had the authority to determine [plaintiff's] basic pay and that [MSPB] also had the authority to review OPM's [decision].").

Following a decision by the MSPB, "[c]laimants can then seek judicial review of MSPB final orders and decisions, but—except for certain discrimination claims—must do so before the Court of Appeals for the Federal Circuit." *Fornaro*, 416 F.3d at 64 (citing 5 U.S.C. § 7703(b)(1)). This procedure—i.e., review of OPM determinations by the MSPB and then the

---

[3] In addition, this argument is directly contradicted by another argument raised by the Plaintiffs, which is that Second Amended Complaint presents a "mixed case." As discussed more fully below, a complaint is a "mixed case" only when a plaintiff alleges an employment discrimination claim accompanied with other claims "that the MSPB has jurisdiction to address." *See* 29 C.F.R. § 1614.302(a)(1).
[4] This subsection specifically cross-references § 8347(d)(1). *See id.*

7

Federal Circuit—"provides a comprehensive statutory scheme which enables federal employees to obtain remedies for prohibited personnel practices engaged in by federal agencies." *Sarullo v. USPS*, 352 F.3d 789, 794–95 (3d Cir. 2003).

The mere fact that none of the proposed class representatives have sought an individual determination by the OPM does not mean that the MSPB would not have jurisdiction to review such a determination. Nor does a proposed class member's failure to seek an individual OPM determination grant this Court jurisdiction by default. Rather, it means only that proposed class representatives must first seek individual determinations by the OPM. To conclude otherwise would pervert the statutory scheme established by Congress by allowing an end run around the remedial structure set up to resolve personnel disputes.

According to the Supreme Court of the United States, CSRA was enacted "to replace the haphazard arrangements for administrative and judicial review of personnel action," including appeals of agency actions that were brought in district courts in "various forms . . . including suits for mandamus, injunction, and declaratory judgment." *United States v. Fausto*, 484 U.S. 439, 444 (1988) (citations omitted). "Congress created in the CSRA a remedial structure that 'avoids an unnecessary layer of judicial review in lower federal courts, and encourages more consistent judicial decisions.'" *Fornaro*, 416 F.3d at 67 (quoting *Fausto*, 484 U.S. at 449).

In addressing whether the CSRA deprived district courts of jurisdiction over review of retirement-benefit determinations by the OPM, Chief Justice Roberts, then a judge sitting on the United States Court of Appeals for the District of Columbia, concluded that the United States had not waived its sovereign immunity in this context because Congress has prescribed "a detailed regime" for vindicating claims for civil service retirement benefits. *See Fornaro*, 416 F.3d at 64. Importantly, the *Fornaro* court rejected the argument "that the CSRA regime's exclusivity for individual benefits determinations does not preclude . . . a collateral, systemwide

8

challenge to OPM policy." *Id.* The court concluded that "[a]llowing an alternative route to relief in the district court because plaintiffs frame their suit as a systemwide challenge to OPM policy would substitute an entirely different remedial regime for the one Congress intended to be exclusive." *Id.* at 68.

Plaintiffs here make a similar argument to that raised by the plaintiff in *Fornaro*. Specifically, Plaintiffs argue that "OPM has no right to adjudicate the claims in this case [because] [t]he claims are against OPM itself." (Pls.' Br. at 12). Although the Third Circuit has not addressed this issue directly, the Court finds the reasoning of the D.C. Circuit persuasive:

> Allowing district court actions challenging how OPM calculates civil service benefits for particular classes of beneficiaries would plainly undermine the whole point of channeling review of benefits determinations to the MSPB and from there to the Federal Circuit. Such an approach would reintroduce the haphazard arrangements for administrative and judicial review of personnel action, involving resort to the district courts through various forms of action, including suits for mandamus, injunction, and declaratory judgment that Congress sought to replace in the CSRA. It would erode the primacy of the MSPB for administrative resolution of disputes and the primacy of the Federal Circuit for judicial review. Allowing the present action to proceed would also impermissibly create a right of access to the courts more immediate and direct than the CSRA provides, thus fracturing the unifying authority of the MSPB, and undermining the consistency of interpretation by the Federal Circuit envisioned by the Act. Nothing about the fact that plaintiffs' action is a systemic challenge to OPM policy mitigates this impact.

*Id.* at 68–69 (internal citations and quotations omitted). The fact the CSRA may not provide for class action adjudication of claims or provide for specific types of relief sought by the Plaintiffs is irrelevant to this Court's determination. *See Bush v. Lucas*, 462 U.S. 367 (1983).

Plaintiffs cite to *Alaniz v. Office of Personnel Mgmt.*, 728 F.2d 1460 (Fed. Cir. 1984), for the proposition that a district court has jurisdiction to review the substantive and procedural validity of OPM regulations concerning COLAs. Although the court in *Alaniz* upheld the jurisdiction of the district court to hear that particular case, it did not directly address the issue now presented. The *Alaniz* court addressed only whether or not OPM's COLAs determinations

are completely discretionary within the meaning of § 701(a)(2) of the APA, which would have deprived the district court of jurisdiction. The *Alaniz* court did not address whether the CSRA deprived the district court of jurisdiction under § 701(a)(1) or § 702 of the APA. *See id.* at 1463–64. Therefore, that case is inapposite.

Plaintiffs next rely on the Federal Circuit's decision in *Romero v. United States*, 38 F.3d 1204 (Fed. Cir. 1994). In that case, the court was presented with a situation in which the federal government, in accordance with an agreement with the commonwealth of Puerto Rico, withheld Puerto Rico income tax from federal employees' paychecks. The *Romero* court concluded that the district court could properly exercise jurisdiction over the class members' claims. Far from supporting Plaintiffs' position, however, *Romero* undercuts Plaintiffs' argument. The court in *Romero* determined that the district court below had proper jurisdiction specifically because the withholding of Puerto Rico income taxes was *not* covered by the CSRA, but was instead the result of an agreement between the United States government and the government of Puerto Rico. *See id.* at 1211 (quoting *Bosco v. United States*, 931 F.2d 879, 883 (Fed. Cir. 1991)). As explained above, however, the determination of whether COLAs should be considered part of "basic pay" *is* within the purview of the CSRA. *See generally* 5 U.S.C. § 8347; *see also Lisanti*, 573 F.3d at 1339.

Other courts throughout the country have agreed with the D.C. Circuit's reasoning in *Fornaro*. For example, in *Matsuo v. United States*, 416 F. Supp. 2d 982 (D. Haw. 2006), a district court considering a proposed class of plaintiffs' challenge to the systemwide exclusion of COLAs from the calculation of retirement pay refused to exercise jurisdiction over these claims. *Id.* at 997. The court concluded that the proposed class members' "claims that COLA benefits should be calculated as part of their retirement pay must be pursued under the exclusive review provisions in the CSRA and FERSA." *Id.*; *see also Whiting v. United States Army*, No. 08-435,

10

2008 U.S. Dist. LEXIS 71734, at *8–9 (D.N.J. Sept. 4, 2008) ("Since its inception, Courts of Appeals—including the Court of Appeals for the Third Circuit—have agreed, holding that the CSRA remains federal employees' only mechanism for redress of employment-related grievances." (collecting cases)); *Keiger v. Sachon*, No. 10-1556, 2011 U.S. Dist. LEXIS 34898, at *5–6 (D. Md. Mar. 30, 2011) (concluding that "[a]uthority to administer the CRSA is vested exclusively in OPM, and only the Board of Merit Systems Protection and the Court of Appeals for the Federal Circuit have jurisdiction to review OPM's decisions" and calling arguments to the contrary "frivolous").

Lastly, Plaintiffs argue that the Court has jurisdiction in this case because its Second Amended Complaint is a "mixed case." Under 29 C.F.R. § 1614.302, "[a] mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1). This provision further provides that "[a]n aggrieved person may initially file a mixed case complaint with [an Equal Employment Opportunity Commission (EEOC) agency] pursuant to this part or an appeal on the same matter with the MSPB . . ., but not both." *Id.* § 1614.302(b). If a claimant elects to proceed along the EEOC-route, an appeal of the EEOC decision may be heard in the district court. *See, e.g.*, 29 C.F.R. § 1614.407.

There are two main problems with Plaintiff's argument in this regard. First, as discussed *supra*, none of the Plaintiffs have sought an individual determination by the OPM. Therefore, no "action that can be appealed to the [MSPB]" exists. As a consequence, Plaintiffs' EEOC complaint is not a "mixed case complaint" within the meaning of the administrative provisions. *See* 29 C.F.R. § 1614.302(a)(1). Second, Plaintiffs' have not filed a formal EEOC complaint that

this Court is aware of.[5] This Court would not have jurisdiction until that claim is administratively exhausted. *See, e.g., Brown v. GSA*, 425 U.S. 820, 832 (1976); *Killingsworth v. Potter*, 307 F. App'x 685, 687–88 (3d Cir. 2009).

The CSRA's "framework for review of certain types of personnel actions essentially preempted the field, superseding the haphazard arrangement of administrative and judicial avenues for appeals of adverse actions to the Civil Service Commission, the district courts, and the Court of Claims." *LeBlanc v. United States*, 50 F.3d 1025, 1029 (Fed. Cir. 1995) (citing *Fausto*, 484 U.S. at 444–45). Plaintiffs ask this Court to regress into the haphazard arrangement existing prior to Congress enacting a comprehensive remedial scheme available under the CSRA. The Court will not accept that invitation. For all of the reasons stated above, the Court does not have jurisdiction to hear any of the claims associated with the OPM's exclusion of COLAs from the determination of "basic pay," at least at this time. Accordingly, claims one through eight in Plaintiffs' Second Amended Complaint must be dismissed.

### b. *The Interim Regulation*

In the remaining three counts of the Second Amended Complaint, Plaintiffs seek to challenge an interim regulation promulgated by OPM, which placed Puerto Rico, the U.S. Virgin Islands, Guam, and the North Mariana Islands in the Rest of the U.S. ("RUS") locality pay area. *See* General Schedule Locality Pay Areas, 75 Fed. Reg. 60,285 (Sept. 30, 2010) (codified at 5 C.F.R. § 531.603). On June 17, 2011, the OPM issued a final rule as to these regulations ("the Final Rule"). *See* General Schedule Locality Pay Areas, 76 Fed. Reg. 32, 859 (July 17, 2011) (codified at 5 C.F.R. § 531.603). Plaintiffs challenge the Interim Regulation on three separate grounds: first, Plaintiffs argue that the interim regulation has a disparate, prejudicial impact on racial and ethnic minorities (although Plaintiffs fail to state which racial and ethnic minorities),

---

[5] Plaintiffs EEOC "complaint" was, in actuality, part of the pre-complaint processing requirements.

*see* (2d Am. Compl. ¶ 4.9); second, Plaintiffs argue that the promulgation of the Interim Regulation violated the APA, *see* (*id.* ¶ 4.10); and third, Plaintiffs argue that the Interim Regulation is "contrary to the fundamental principle of the settlement in *Caraballo v. United States* and the purposes and policies of FEPCA," *see* (Compl. ¶ 4.11).

Defendants argue that these claims should all be dismissed for lack of jurisdiction because Plaintiffs have not exhausted their administrative remedies, there is no case or controversy as to whether the Interim Regulation violated the APA, and because locality-pay determinations are fully within the discretion of the OPM. After taking both parties arguments into consideration, as well as considering the fact that the Interim Regulation is no longer applicable in light of the Final Rule, the Court will dismiss the remainder of Plaintiffs' claims.

i. <u>Plaintiffs Have Failed to Exhaust Administrative Remedies</u>

As discussed above, in order to bring an employment discrimination suit in federal court, certain prerequisites are required. Among those perquisites is the requirement that a plaintiff must first exhaust his or her administrative remedies. *See Brown*, 425 U.S. at 832; *Killingsworth*, 307 F. App'x at 687–88. Plaintiffs argue that they have in fact exhausted their administrative remedies because they have engaged in settlement negotiations with the Defendants. Plaintiffs cite to no authority indicating why this constitutes exhaustion, and the Court does not know of any. In addition, Plaintiffs argue that the Court should waive the "intensely practical" doctrine of administrative exhaustion because of these negotiations. Again, however, the Court fails to see the relevance of settlement negotiations in the context of requiring administrative exhaustion. Because Plaintiffs' EEOC "complaint" has not been resolved, Plaintiffs have not satisfied the prerequisites for bringing an employment discrimination suit and this claim will be dismissed.

ii. <u>Plaintiffs Claim That the Interim Regulation Violated the APA is Moot</u>

"Claims become moot when circumstances evolve to destroy their justiciability." *Templin v. Independence Blue Cross*, No. 11-2453, 2012 U.S. App. LEXIS 13163, at *12 (3d Cir. June 27, 2012). If a case is moot, the Court lacks jurisdiction because there remains no case or controversy in the constitutional sense. *See SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). In Plaintiffs' Second Amended Complaint they challenge the promulgation of the Interim Regulation as violating the APA. Regardless of whether or not the Interim Regulation was produced in accordance with the strictures of the APA, the Interim Regulation is no longer in force; it has since been superseded by the Final Rule. Therefore, even if this Court were to hold that the Interim Regulation was void, this relief would be meaningless. Thus, the tenth claim in the Second Amended Complaint is moot and will be dismissed.

iii. <u>The Court May Only Review Locality Pay Determinations For Compliance with the Notice and Comment Requirements</u>

Lastly, Plaintiffs contend that the Interim Regulation (and presumably, the Final Rule) is contrary to the settlement agreement in the case *Caraballo v. United States*, Case No. 97-cv-27 (D.V.I.). The Court, however, does not have jurisdiction to hear this claim because locality-pay determinations are fully within OPM discretion. If Plaintiffs wish to enforce a settlement agreement, they must do so through a motion filed in that specific case, not by way of a collateral attack in separate and distinct litigation.

As discussed above, there are certain limits to the waiver of sovereign immunity contained in the APA. Congress specifically excluded from its consent to suit found in the APA situations where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Pursuant to 5 U.S.C. § 5304, "[t]he establishment or modification of any such

14

boundaries [for determining locality pay] shall be effected by regulations which, . . . shall be promulgated in accordance with the notice and comment requirements . . . ." *Id.* § 5304(f)(2)(A). Moreover, "[j]udicial review of any regulation under this subsection shall be limited to whether or not it was promulgated in accordance with the requirements referred to in subparagraph (A)." *Id.* § 5304(f)(2)(B). In other words, judicial review is limited only to whether a locality-pay regulation was properly noticed and whether the OPM properly permitted public comment. Congress therefore vested full discretion for making these decisions in the OPM. Accordingly, this Court does not have jurisdiction to consider extraneous claims beyond those related to the notice and comment requirements. Therefore, Plaintiffs' final claim must be dismissed.

### III. CONCLUSION

For all of the reasons discussed above, the Defendants' Motion will be granted and Plaintiffs' Second Amended Complaint will be dismissed. All other pending motions will be dismissed as moot. An appropriate Order will follow.

ANNE E. THOMPSON, U.S.D.J.

Date: Aug 13, 2012